**Frederick M. DEVER, Jr., Petitioner–Appellant,**

v.

**Lawrence MACK, Warden, Respondent–Appellee.**

No. 00–4402.

United States Court of Appeals, Sixth Circuit.

July 19, 2002.

Before KRUPANSKY and COLE, Circuit Judges; and DUGGAN, District Judge.*

OPINION

COLE, Circuit Judge.

This action stems from a criminal trial for sexual assault at which testimony from the victim was relayed through a pediatrician who had interviewed the victim shortly after the assault. The defendant, Frederick M. Dever, argues that his rights under the Confrontation Clause of the United States Constitution were violated by allowing this hearsay testimony to be presented to the jury. Dever now appeals from the district court's denial of his peti-

---

* The Honorable Patrick J. Duggan, United States District Judge for the Eastern District of Michigan, sitting by designation.

tion for a writ of habeas corpus under 28 U.S.C. § 2254. Finding no error, we AFFIRM the judgment of the district court.

## BACKGROUND

Frederick M. Dever was indicted by a Hamilton County grand jury in 1987 on charges of rape and gross sexual imposition of his four-year-old adopted daughter, Kristen, in violation of OHIO REV. CODE §§ 2907.02 and 2907.05. The alleged rape took place on October 21, 1987. On October 23, 1987, Kristen Dever was interviewed by social worker Beth Casbeer, police officer Michael Wilson, and pediatrician Dr. Ann Saluke about the attack.

Prior to trial, Dever's counsel filed a motion requesting that the trial court examine Kristen Dever to determine her competence to testify. The trial court ruled that she was not competent, and thus unavailable to testify as a witness at trial. Dever's counsel then filed a motion *in limine* to exclude the statements Kristen Dever made to Casbeer, Wilson, and Saluke on October 23, 1987. Although the trial court did not rule on this motion before trial, it indicated that Kristen Dever's statements to Dr. Saluke would be admissible under Ohio Rule of Evidence 803(4), which allows an exception to the ban on hearsay testimony for statements made for the purpose of medical diagnosis or treatment.

At trial, the prosecution's case relied on two key pieces of evidence: the testimony of a neighbor, Diane Potter, who overhead the attack as it was occurring; and Dr. Saluke, who examined Kristen Dever two days after the attack. Dr. Saluke testified as follows regarding Kristen Dever's statements during her interview.

> Kristen told us that her father put his pee pee in her mouth and there was some white stuff that had a yucky taste and also that he put his hands on her

pee pee and his pee pee on her pee pee and she identified her genital area as the pee pee .... She described the [yucky taste] as mashed potatoes with butter.

Dr. Saluke also testified as to the foundation of Kristen Dever's statements, to the degree that they fall within the OHIO R. EVID. 803(4) hearsay exception for:

> [s]tatements made for purpose of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

Dr. Saluke testified that:

> The purpose of the questions [asked during the physical examination] [is to] give some indication of the possible extent of physical injury, also it is important in cases of sexual abuse to try to determine extent of contact and possibility of sexually transmitted diseases. And also in some cases the contact or injury might have some emotional or psychological impact on the child.

The following interchange also occurred between the government and Dr. Saluke:

> Government: Okay, now, are these questions that you as a physician ask of the child, are they necessary for the diagnosis and treatment that you or other doctors prescribe and conduct at your request?
>
> Saluke: They are necessary in that it directs your physical exam but also determines in some cases whether or not cultures for sexually transmitted diseases are indicated and possible treatment. And also whether or not counseling is indicated.
>
> Government: Now, in asking these questions you indicate that it is necessary for the diagnosis and treatment, is

[sic] the identity of the offender in any way shape your diagnosis and treatment?

Saluke: The identity of the offender is important in that if it is, I mean if it is someone the child is going to have repeated contact with that is a caretaker for the child or the child could be repeatedly exposed to, it increases the possibility of that happening repeatedly and I think that, you know I feel we are obligated to protect the child from recurring episodes if possible.

It also can have [an] effect on the child emotionally and psychologically if it happens repeatedly, well depending on the age of the child a single incident versus repeated incident and then whether or not they are ongoing can have psychological effects.

Later, the questioning further centered on the purpose of the examination:

Government: Okay, now, prior to conducting the examination, did you or anyone in your presence explain to her the purpose of the examination and treatment?

Saluke: Yes.

. . .

Government: Doctor, what is your customary and ordinary procedure in informing a patient prior to conducting the exam or treatment?

Saluke: Typically we instruct them that based on the history of what has occurred we feel that it is important that we examine them to see if there is any evidence of physical injury, if not to assure them that they appear to be healthy and to determine even if they do not have symptoms whether or not there is possibility that they have a sexually transmitted disease that if it were to go untreated could cause health problems for them in the future.

. . .

Government: Do you explain in any fashion customarily the importance of the identity of the offender in your treatment or diagnosis?

Saluke: We do customarily for different reasons, one is whether or not the child is at risk of repeated exposure to that individual but also we try and impart upon the child that you know this person that it is important for us to know because sometimes that person needs help or there are other children who might also be effected [sic].

Government: Now, Doctor, drawing your attention to the 23rd of October and more specifically to Kristen Dever, do you recall if you followed that customary procedure in explaining why you were asking questions of her before you asked those questions?

Saluke: Yes

Government: Did she, to the best of your knowledge, did she understand why she was being asked those questions?

. . .

Saluke: I don't recall her specific response.

Neither the social worker, Beth Casbeer, nor the police officer, Michael Wilson, testified at trial. After hearing the testimony of Diane Potter and Dr. Saluke, the jury returned a guilty verdict on September 1, 1988. The trial court merged the two offenses and sentenced Dever only on the rape count, resulting in a sentence of imprisonment for a term of ten to twenty-five years.

With the assistance of new counsel, Dever appealed his conviction to the Ohio Court of Appeals on March 23, 1989—raising the issue that OHIO R. EVID. 803(4) prohibits Dr. Saluke's testimony regarding Kristen Dever's out-of-court statements. The Ohio Court of Appeals

affirmed the trial court's judgment on January 31, 1990. Dever's subsequent appeal to the Ohio Supreme Court on this issue was also rejected.

Dever next appealed to the United States Supreme Court, which vacated the judgment of the Ohio Court of Appeals and remanded the case for further consideration in light of *Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). *See Dever v. Ohio,* 498 U.S. 1009, 111 S.Ct. 575, 112 L.Ed.2d 581 (1990). On remand, the Ohio Court of Appeals reversed the trial court conviction because it found that the record did not support a conclusion that Kristen Dever's statements were motivated by her desire for medical diagnosis or treatment, a prerequisite to the admission of her statement under the medical treatment hearsay exception in Ohio. *State v. Dever,* No. C–880712, 1991 WL 95234 (Ohio Ct.App.1991). On August 19, 1992, the Ohio Supreme Court reversed the Ohio Court of Appeals, finding that the admission of hearsay statements falling within a firmly rooted hearsay exception does not violate the Confrontation Clause. *See State v. Dever,* 64 Ohio St.3d 401, 596 N.E.2d 436 (Ohio 1992) (citing *White v. Illinois,* 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992)).

Dever filed a timely petition for writ of habeas corpus under 28 U.S.C. § 2254 on October 1, 1998 in the United States District Court for the Southern District of Ohio. In an amended petition, Dever asserted eight grounds for relief, including two Confrontation Clause issues. The district court denied Dever's petition for habeas corpus on October 27, 2000, but issued a certificate of appealability on the two Confrontation Clause issues. Dever filed a timely notice of appeal on November 6, 2000.

Although the § 2254 motion originally presented eight different claims for relief,

the district court granted a certificate of appealability for only two of the claims. We will consider those two claims together: whether Petitioner's Confrontation Clause right was violated by the admission of evidence under the medical treatment exception to the hearsay rule.

## DISCUSSION

### A. STANDARD OF REVIEW

In an appeal of a district court's decision denying habeas relief under 28 U.S.C. § 2254, this Court's review is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L.No. 104–32, 110 Stat. 1214 (1996). Under AEDPA, habeas relief may not be granted with respect to any claim adjudicated on the merits in state court unless the adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). This Court must presume that all determinations of factual issues made by the state court are correct unless the petitioner can rebut that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

In *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court determined that a state court's decision is contrary to clearly established federal law where it fails to consider a rule of law that is embedded in the Court's jurisprudence at the time the state conviction became final. *See* 529 U.S. at 380, 120 S.Ct. 1495. In defining "clearly established law," the Court held that rules

of law are "sufficiently clear for habeas purposes even when they are expressed in terms of a generalized standard rather than as a bright line rule." *Id.* at 382, 120 S.Ct. 1495. Comparatively, a rule established following a petitioner's conviction "that breaks new ground or imposes a new obligation on the States or the Federal Government" is not considered to be clearly established for the purposes of this section. *Id.* at 381, 120 S.Ct. 1495. The *Williams* Court further held that a state court unreasonably applies clearly established Supreme Court precedent when it correctly identifies the governing legal principle in the case, yet unreasonably applies that principle to the facts of the defendant's case. *See id.* at 413, 120 S.Ct. 1495. A state court is considered to have unreasonably applied Supreme Court precedent when it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407, 120 S.Ct. 1495. We will examine Dever's claims under these parameters.

## B. ANALYSIS

Whether Petitioner's Confrontation Clause right was violated by the admission of evidence under the medical treatment exception to the hearsay rule.

Dever argues that the admission at trial of Kristen Dever's out-of-court statements to Dr. Saluke violated his Sixth Amendment Confrontation Clause right. The United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. CONST. amend. VI. Not all out-of-court statements are prohibited under this standard, however. *Bourjaily v. United States,* 483 U.S. 171, 107 S.Ct. 2775, 97

L.Ed.2d 144 (1987). A witness's prior statements may still be admitted if the statement has sufficient "indicia of reliability." *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). If the statement does not fall within a firmly rooted hearsay exception, then it must show "particularized guarantees of trustworthiness" in order to be admitted. *Idaho v. Wright,* 497 U.S. 805, 815, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). If the statement does fall within a firmly rooted hearsay exception, then "reliability can be inferred without more." *Id.* There is "no doubt that the [exception for statements made for purposes of medical diagnosis or treatment] ... [is] firmly rooted." *White v. Illinois,* 502 U.S. 346, 355 n. 8, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992) (applying the medical treatment exception to the hearsay rule to the out-of-court statements of a four-year old sexual assault victim).

Dever is protected by the Sixth Amendment Confrontation Clause in his criminal trial, and has the right to be "confronted with the witnesses against him." U.S. CONST. amend. VI. Although out-of-court statements still may be admitted where they bear certain indicia of reliability, see *Bourjaily,* 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144, Dever attacks the reliability of Kristen Dever's out-of-court statements to Dr. Saluke—specifically pointing out that her statements do not bear the "particularized guarantees of trustworthiness" in order to be admitted. *Idaho,* 497 U.S. at 815, 110 S.Ct. 3139.

Dever's Confrontation Clause claim fails because the admission of Kristen Dever's out-of-court statement to Dr. Saluke occurred under a firmly established exception to the hearsay rule, and as such is not subject to the more demanding "particularized guarantees of trustworthiness" required for other types of hearsay exceptions. *Idaho* involved a residual hearsay

exception, IDAHO R. EVID. 803(24), which allows certain "reliable" hearsay statements to be admitted that do not otherwise fall within a recognized hearsay exception. *See* 497 U.S. at 817, 110 S.Ct. 3139. The United States Supreme Court took pains to note that this hearsay exception, one that admittedly involved a child's out-of-court statements, was not a "firmly rooted hearsay exception for Confrontation Clause purposes." *Id.* However, *White v. Illinois,* which likewise involved the out-of-court statements of a child sexual assault victim, establishes that out-of-court statements that have sufficient guarantees of reliability to fall within a firmly rooted hearsay exception, such as the medical treatment exception, per se satisfy the Confrontation Clause. 502 U.S. at 356, 112 S.Ct. 736. Under Ohio's interpretation of the facts and law at issue here, Kristen Dever was motivated to tell the doctor that she had been sexually abused for purposes of medical treatment, and she met the legal standard for doing so established in *Dever,* 596 N.E.2d at 438. Under the standards of AEDPA, our § 2254 habeas inquiry ends there. *White,* 502 U.S. at 356, 112 S.Ct. 736.

Dever also submits that the state of Ohio can no longer claim that its medical treatment hearsay exception is a firmly established exception to the hearsay rule because the Ohio Supreme Court modified the standard by which the rule would be applied in 1992. *See State v. Dever,* 64 Ohio St.3d 401, 596 N.E.2d 436, 443 (1992). Prior to 1992, Ohio common law required that a declarant must intend that his or her statement to a physician be made for the purposes of medical treatment for the medical-treatment hearsay exception to apply. *State v. Boston,* 46 Ohio St.3d 108, 545 N.E.2d 1220 (1989). However, in 1992, while considering Dever's case upon remand from the United States Supreme Court, the Ohio Supreme Court held that when applied to children, the practical effect of this rigid motivational requirement of OHIO R. EVID. 803(4) is "that a young child's statements to a doctor in the course of a medical examination will virtually never be admissible under that rule." *Dever,* 596 N.E.2d at 443. Instead, it recognized that although a child may not personally seek treatment, she would often have the same motivation for diagnosis and treatment once the examination had begun, and the same motivation to tell the truth. *Id.* at 444. As such, the Ohio Supreme Court gave the trial judge primary discretion to decide whether the circumstances surrounding the making of the hearsay statement had sufficient reliability such that the statement should be admitted under the medical treatment hearsay exception in OHIO R. EVID. 803(4). *Id.*

Despite this change in the motivational requirement for a statement to qualify under OHIO R. EVID. 803(4), Dever's Confrontation Clause claim fails because Ohio's medical treatment exception to the hearsay rule still qualifies as the firmly rooted exception that per se satisfies the Confrontation Clause. *See White,* 502 U.S. at 356, 112 S.Ct. 736. The new medical treatment hearsay exception rule still plays an important gate-keeping role for statements that do not have sufficient guarantees of reliability. If the child's statements were "inappropriately influenced by another," or were "in response to a suggestive or leading question (as was the case in *Idaho v. Wright* )," or were influenced by another factor "such as the bitter custody battle in *State v. Boston,*" then the trial court judge should not consider those statements made for purposes of diagnosis or treatment. *Dever,* 596 N.E.2d at 444.

Moreover, this Ohio rule is not inconsistent with federal law. The text of the Ohio medical treatment exception rule

tracks the federal medical treatment exception rule almost verbatim. *See* OHIO R. EVID. 803(4); FED. R. EVID. 803(4). The standard by which each rule is applied is also very similar. Two circuits have allowed child-victim statements under the federal medical treatment hearsay exception, *see* FED. R. EVID. 803(4), as long as the statements made by the child were "reasonably pertinent to diagnosis or treatment." *United States v. Tome*, 61 F.3d 1446 (10th Cir.1995); *see also United States v. Iron Shell*, 633 F.2d 77 (8th Cir. 1980). The rule as announced by the Ohio Supreme Court falls within this framework of reliability, and as such fulfills the mandate of habeas corpus where we look only to violations of clearly established federal law. *See* 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 402, 120 S.Ct. 1495. The fact that Ohio modified its common law regarding this rule does not change its status as a firmly rooted exception to the hearsay rule that satisfies the Confrontation Clause. *White*, 502 U.S. at 356, 112 S.Ct. 736.

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.